May it please the court, Steve Sadie from the Federal Public Defender's Office for Mr. Perez-Lopez. There are two principal issues in this appeal, one legal and the other factual. The adequacy of the Miranda warning is a pure issue of law. The trial court found, the officer testified, that the advice for the indigent suspect was in case you don't have money or funds, you have the right to solicit the court for an attorney. Under Garcia, under Conley, that advice requires suppression. In Spanish, that's the source of the problem. You have to ask, isn't it? It's wrong to say if you don't have money to hire a lawyer, you can ask the court to appoint one. Interestingly, the trial court saw the same defect, which is that it communicates that you can ask, but it could be denied. And what I believe Conley and Garcia require is that you be advised that you have a right to appointed counsel, that it is not contingent on, A, a future event, B, the exercise of discretion by the judge in the future. But was the actual card introduced into evidence? No. He read the card. If you look at page 59 of the excerpt of record, I approached the witness and asked him about the reading of the advice. On page 43, on direct evidence, he testifies to a fairly standard Miranda advice. With the card for the first time, and only the half of the card with the signature on it was placed into evidence, I was able to cross-examine about step four, and he had to admit that the earlier advice he gave was wrong, that he had given false representations about the contents of his advice, and he admitted that what was actually testified to was, quote, what was communicated to Mr. Perez Lopez at page 62. So the record is very clear that the only thing that was communicated to Mr. Perez Lopez was what was testified to by, orally, by Officer Torres. And that absolutely fails the test under Conley, under Garcia. That's the kind of test the rest of the Miranda warning was given. The only defect is the one that yours signaled. Well, I'd also point out that on page 43, where he is giving the rest of it, I have a duty to provide this advice. He also says that you have the right to interrupt the conversation. Obviously, again, not standard Miranda warnings. And in the context of the Conley and Garcia case, where there was also advice regarding the right to counsel, the key point is the failure to give correct advice regarding appointed counsel, and that's what requires reversal. When he was testifying under your cross-examination, as he stated, did he testify only to the sentence at that point, in case you don't have enough money or fines, you have the right to solicit the court for returning? Yes. So you did not recapitulate anything else? He did not recapitulate anything else. And what he admitted to was that he had misinterpreted, given false information when he testified on direct about that phrase, and that he had to admit that this was indeed what was communicated to Mr. Perez-Lopez. I guess what I'm asking is this. There are also questions in some of the case law about what is being communicated, about when you could have the lawyer, right? Yes. The way he reported the first time, there was fair specificity about when you could have the lawyer. I would say no. It was fair specificity if you had your own lawyer, but as far as the right to have appointed counsel, the only inference from the actual advice given is that it was contingent upon a future event, which is the appearance before a judge in a court, and that is what expressly Connelly and Garcia prohibit. I didn't say that. It says if you don't have enough money of the right to solicit the court. It doesn't say what. This doesn't say when. That's a problem. It doesn't say now. It doesn't say later. It doesn't say when at all. It's soliciting the court, and I think in Garcia where they talked about going to a court or a commissioner. Oh, solicit the court, I see. Yes. How would an attorney be appointed for you? That is depending on the individual practice in the individual jurisdiction. What has to be communicated is if you want a point. The question is how would one be appointed to the court with it? I don't think that is the only way that can be done. The states are free to do whatever they want to in terms of making counsel available to suspects who demand the right to counsel. Once that is triggered, the important thing under Miranda is no further interrogation can occur until that is complied with. I guess what I'm getting at is it seems to me that the only way that someone is going to get an attorney that can be guaranteed that he's going to be paid and so forth is for a court appointment. You have to ask the court for that. It's really not inaccurate. That's what it means. I guess I think there's two parts about it. One is that when you are involved in an interrogation, that because you have the right before and during interrogation to have the counsel, that it has to be communicated to the suspect that they have the right to counsel at that moment and that it is not contingent on any discretion, that it is an absolute right. You have a right to have somebody there at that moment. There is no attorney there. So what really the right is, is you don't have to make any statements. You can remain silent. Actually, I believe it operates as a limitation on police power. They have to stop until they do comply with it. And what they have to, the suspect has to be told is if you want to invoke this right, however they choose to implement that right, this questioning has to stop. And that's not what was advised here. And that's why under the prophylactic Miranda rule. I don't know if that's part of the Miranda wording. The questioning has to stop by the seat now. No, if the right to have counsel present at that time is invoked, it has to stop. Well, what I'm concerned with is, as Tanner was saying, that the rest of the warning that was given, in effect, really covers it. That he has a right to remain silent. He doesn't have to talk if an attorney isn't there. The other rights are meaningless for him because he has no money. And I believe that's what both Connelly and Garcia say, is that because both those cases had all of the other rights surrounding them, it was the critical point of appointed counsel that was deficient. And that's the same deficiency here. I'd like to brief. Just a moment. What is the concept? Suppose we agreed with you on this point and not on your other points. What we have is a conditional plea bargain, is that right? Yes. He would have a right to withdraw his guilty plea. All right. So if any of these, if you succeeded on any of these points, he would have the right to withdraw his guilty plea. That is correct. Which he might or might not do. But that's basically where we are. Yes. All right. The keystone on the credibility question is at page 26 of the judge's opinion, where he states that, I credit the testimony of Torres, which is in accord with Weaver's report. There are five reasons why that is not in accord with Weaver's report, and the Court should find that the entire binding regarding the sequence is wrong. First, there's no words in the Weaver report about express consent to entry prior to entry. Torres says there's words of consent. Second, Weaver says there's an admission before the entry. No such language in Weaver's report. Third. Let's assume you're right. I mean, you seem to be right. Okay. Nonetheless, there was substantial evidence in the record that would have supported, that did support his conclusion because there was an officer who got up and testified to this version of the story. Now, the judge apparently was in error in believing that the two stories meshed because in large part they didn't mesh. But does that make his conclusion, his finding, clearly erroneous? Yes. Why? It's tied in the same sentence. And with all the other impeachment that was going on, here's an officer who didn't remember, didn't write a report, and had two opportunities to talk to a defense investigator and never said anything. You're essentially saying his credibility determination might have been different. And it has to be different. It doesn't necessarily mean it's clearly erroneous. It means perhaps it should go back to get redone. I think that it's clearly erroneous and has to be vacated. There is no finding. I think this Court can grant relief based on the failure to carry the burden of proof. There's just no way that under these facts, with that fact correctly resolved, that they've carried their burden of proof. I think the judge could have said, I understand that these two officers disagree to some degree about precisely what happened, but I believe Officer No. 2. This is the extraordinary case that under these facts where there is this much opportunity to, where he has said, I didn't remember, where he's had two opportunities to give an account of the story and only testimony three months later for the first time besides there was conversation before the entry. This is not a denormal case. This is a place where a line should be drawn about police testimony. Thank you very much. Thank you. Counsel, may I please accord Frank now for the government. And if I could address first, I have to move my notes because I wasn't going to do it that way, the advice of rights issue. And first of all, simply distinguish the Connell and Garcia cases. I think that the Connell case, this Court's opinion in Connell, makes it very clear that the defendant in that case was told that an attorney would not be provided a government expense. In fact, I think the language of the opinion indicates that the officers who gave the advice of rights in Connell told the defendant there that he would have to make his own arrangements. A clear violation of that portion of Miranda, which requires some advice that a lawyer would be provided a government expense. This is not that kind of case. Here, the officer testified that he did have the right to court-appointed attorney and also conditioned that a previous. I'm sorry. Pardon? Are you talking about before, the earlier testimony before he actually. The earlier testimony, Your Honor. But then he said exactly what he said, and I assume we can assume that he said what he said he said. The question is, is that adequate? And I think it is adequate under California v. Prysock. I think that's the substance of Miranda, California v. Prysock, which holds, I believe, that the Miranda language needn't be as precise or exact as the defendant in this case would have it. And I would also point out that when the officer did testify in cross-examination, he didn't simply say you have the right to solicit. He said, in case you don't have enough money or funds, you have the right to solicit the court for an attorney. And I think, again, that that's sufficient under Miranda to advise the defendant. Why doesn't that simply say you can ask, but you won't necessarily get? I mean, is that what he was saying? I don't think Miranda has ever said, and if you ask, the court has to appoint an attorney. Because it doesn't say ask. It says the court will appoint an attorney, and this doesn't say that. It doesn't say that, Your Honor. I can't argue that. It doesn't say that. That's not the precise language, but I would ask the court to look at the California v. Prysock case and simply find that when these rights are viewed in totality, that they're sufficient under Miranda. And I think it is significant to note that the other portions of the advice of rights as testified to by Officer Torres are not in question, and they're set forth in the excerpt of record, page 43, including you have the right to consult with an attorney before making any statements. I think that's sufficient under Miranda. And this is, again, I would distinguish Connell, and I would distinguish Garcia, because the Garcia case deals with an advice of rights that very clearly does condition the right to counsel upon a first appearance before the court. I'm not sure this is the precise language I have in my notes. No attorney until you first appear. And this case is not a Garcia case either. There's no ‑‑ Well, it's not precisely the same problem, but it's a problem ‑‑ it's not a problem of similar magnitude. I would suggest not, Your Honor, because here the total advice of rights makes it clear that this defendant does not have to make any statements, has the right to consult with an attorney before making statements. Well, it doesn't say he had a right. That's the whole problem. It says you can ask to get an attorney. That's true, Your Honor. And it also says you have the right to consult with an attorney before making any statements. And I think those taken together are sufficient to let this defendant know, you have a right to a lawyer and you don't have to pay for the lawyer and you have a right to remain silent until you get an attorney. Where is the part that you were just reading from? Where is that in the record? I'm sorry, Your Honor, which one? The part that you were just reading from. There are two separate statements. One is at the ex super record page 43. Okay. That's the testimony of Officer Torres. And then later on ‑‑ But that was reading from the English version, right? That's correct. Which is not what he read. That was his reading from Spanish to English. I'm pretty sure about that. I thought he was reading the English version. And what he was doing the second time was reading his translation of the Spanish version. I think in the second instance, he was being cross‑examined regarding the meaning of the Spanish version. And the meaning of the Spanish version, he testified to, and Mr. Sadie is correct in that in arguing it, he did say to solicit the court for an attorney. But what I'm pointing out is the language which is not included there is that prior to saying solicit the court for an attorney, he says in case you don't have enough money or funds, you have the right to solicit the court for an attorney. Now, it does not include, and Your Honor is correct, after that language, and if you solicit the court for an attorney, an attorney will be appointed for you. But I think that the advice of rights taken in total is sufficient under Miranda and I think would be supported under California ‑‑ Assuming that there is a flawed Miranda transaction here, we've spent half of your argument time on this flawed Miranda statement. Assuming it is flawed, does that, or why doesn't that poison the consent to the search? Well, Your Honor, because the consent really occurred. If I can pass to the consent argument, Your Honor, then I will do that. That's the other half of the case. It is. With respect to the consent analysis, my argument in the brief is that consent is to be determined on the totality of facts surrounding the giving and the consent. Here, the trial court found the testimony of Officer Torres credible, and that's not clearly erroneous. What did happen here, and much is made of this in the briefs, is the inconsistency between the testimony of Officer Torres and the report by Officer Weaver. Officer Torres, the court would recall, was a Spanish speaker who confronted Mr. Perez Lopez at the door with Officer Weaver. Officer Weaver was not a Spanish speaker, but Officer Weaver wrote the English report, which was received in evidence. And I would first argue, as the trial court found, that while the written report and the oral testimony may not entirely mesh, they're not really incredibly different. Officer Weaver's report does say that Mr. Perez Lopez let us in. Now, that's not articulated perhaps the way a lawyer or a court would articulate consent, but I don't think saying he let us in is inconsistent with what Officer Torres said regarding the defendant appearing at the door, pausing, then smiling, then opening the door and saying, come in. And the reason I argued the Miranda issue a little bit in conjunction with that issue is I think this court can look at the subsequent behavior of Mr. Torres Lopez in making a determination as to whether that set of facts is a credible one. Because the court will recall, after he allowed the officers in, he not only showed them where the laminating equipment was, but he actually ran through the process with them of how he went about creating this phony identification. And while the issues I see are separate issues, I think that subsequent behavior can be considered by this court in considering whether the testimony of Officer Torres should be credited as the candidate. And I think that is true. Well, Officer Torres' testimony was contradicted in part by the defendant. He said, well, when Officer Torres said, may we come in, and the defendant said, well, you're already in. I would say it was not only contradicted in part. They're just radically different views of events. And I think Judge Panner, I think correctly, gave credit and found Officer Torres credible. Mr. Perez Lopez said basically they just came in. There was no conversation. We didn't talk at the door. We didn't bingo. He was inside. Suppose we did think that there was a tension between Officer Torres and Officer Weaver and that the statement that they were inconsistent was not so, at least in part it's not so. Does that matter? That's what I was asking your opponent. What happens then? I mean, let's suppose we also thought that Officer Torres' statement of standing alone weren't credited would be sufficient. Then do we vacate and remand for further fact findings, or what do we do at that point? Well, I guess two answers, if I might. One, on the first question, I think that Judge Panner, as the trial judge, the one who was sitting and listening to the evidence, had the right to say, I find Officer Torres to be credible, which is what he did. But it isn't what he said. He found that it was credible. He didn't find that credible and other testimony not credible. But he said, I'm looking for the page here. He did, in his findings, say that he found the testimony of Officer Torres credible. Now, that doesn't mean that you have to agree. You could. He said he was basing it on Torres' testimony and Weaver's report. That's correct. And he credited the testimony of Torres, which is in accord with Weaver's report. Yes. I mean, that was pretty questionable, because Torres says the guy's happy, and Weaver says the guy's unhappy. And Torres says it all happened right away, and Weaver says it took 30 minutes. And his stories just don't mesh very well. They don't entirely mesh. I'm not going to argue they do. And if I did, you wouldn't believe me. They don't. They can read. But nonetheless, I think that this Court should, consistent with the deference that's given to a trial judge making fact findings, find that Judge Hanner had the right to credit Officer Torres' testimony. And I see I'm running out of time. Thank you. Thank you. Three brief points on the Miranda issue. First of all, the Connell reference that Mr. Noonan just made was included a may get appointed counsel in the future. So it's not the bold statement we just heard. It's almost identical to our situation where there was a discretion in the future that was communicated to the person. Second of all, Prysock is a case we're relying on. At page 24 of our opening brief, they adopt Garcia and provide exactly the reasoning why this is deficient as a matter of law. Third, as a matter of fact, at the part that was read at page 43 was the officer reading from the Spanish card and translating. I believe that the cross-examination was pointing out that what was communicated to him was this. With that change, with that effect, I think that part of what can be, you can see that with the reference to Derbe as, you know, it is my report. Is the earlier testimony reading from the English version or is it doing a different translation of the Spanish? I believe it is giving what the Spanish says in English. And that's where he got caught having basically given a completely different statement about what the right was, which would have probably passed muster here if we hadn't been able to turn around and ask him about what it meant in Spanish. And he had to basically keep those words.  Thank you very much. Thank you. The case of the United States v. Paris protest is submitted.
judges: Goodwin, Hug, Berzon